UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XP Inc. and XP Investimentos CCTVM S.A., <br><br> *Plaintiffs*, <br><br> v. <br><br> Grizzly Research LLC and <br> Siegfried G. Eggert, <br><br> *Defendants*. | Case No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs XP Inc. and XP Investimentos CCTVM S.A. ("XP Investimentos," and together, "XP"), through their attorneys, Kasowitz LLP, and for their Complaint against Defendants Grizzly Research LLC ("Grizzly") and Siegfried G. Eggert ("Eggert," and together, "Defendants"), alleges as follows:

**INTRODUCTION**

1. This action arises from Grizzly and Eggert's publication of a report containing false and defamatory statements (the "Report") outrageously accusing XP Inc. of operating a "massive," "Madoff-like Ponzi scheme." The Report, published on March 12, 2025, claimed that two of XP Inc.'s proprietary funds – the Gladius and Coliseu funds (the "Funds") – had generated returns *not* from ordinary trading operations, but through supposedly "nefarious activities."

2. The Report's claims of impropriety, however, are demonstrably false. The Funds are purely proprietary to XP Inc. and have no outside investors – meaning that they are managed exclusively for XP Inc.'s own benefit. Thus, the overarching premise of the Report's false claims – that XP Inc. is a Ponzi scheme – suffers from a foundational error because a Ponzi scheme, by definition, requires outside money from early investors to pay out later investors. Moreover, the Report's contention that XP Inc. uses the sale of COEs (as defined below) to pay out the Funds'

profits is wholly belied by the fact that revenue from the sale of COEs make up only a small portion of XP's total revenues. Simply stated, it is impossible for XP Inc. to have operated a fraudulent Ponzi scheme based solely on revenue from the sale of COEs.

3.     While the Report states that XP markets and sells COEs in a predatory manner to generate a revenue stream that supposedly sustains the Funds' artificially high returns, the truth is that XP has priced and sold these financial products in compliance with the applicable regulations in Brazil. In the history of XP's sales of COEs, neither the securities regulator in Brazil nor the Brazilian Central Bank – both of which exercise stringent oversight of XP and its business – have investigated, prosecuted, or fined XP for the manner in which it has marketed, priced, and sold COEs.

4.     The Report's baseless assertion that XP Inc. conceals illicit activities through a highly complex financial structure is at odds with the highly-regulated and audited environment in which the Funds operate. The Funds are thoroughly scrutinized by several outside and independent entities. They are audited regularly by XP Inc.'s external auditor at PwC. They also are administered independently by BNY Mellon, and regulated by both the securities regulator and the Brazilian Central Bank – neither of which has cited XP Inc. for its management of the Funds, much less its operation of a Ponzi scheme.

5.     There is only one apparent reason why Grizzly and Eggert would so brazenly, maliciously, and recklessly publish a Report replete with such false and defamatory statements about XP's business: self-profit. With the apparent goal of driving down XP Inc.'s stock price, Grizzly, at Eggert's direction, published the Report – and then disseminated it widely through its website and social media channels. Grizzly and Eggert apparently sought to manipulate the

market's perception of XP's business, causing XP Inc.'s stock price to drop and allowing Grizzly and/or Eggert to profit on their short positions.

6.      Grizzly and Eggert were the primary beneficiaries of the Report's publication. Their apparent "short and distort" scheme of shorting XP Inc.'s stock and distorting its value appears to have paid off after XP Inc.'s stock plummeted 4% shortly after publication. Grizzly appears to have admitted as much by posting the Report on X on March 12, 2025, and stating: "We are short XP Inc."

7.      The Report's impact was swift and significant. Many of XP's long-time clients, investors, and business partners withdrew their funds with XP, resulting in a staggering decline in revenue and damage to XP's business relationships. The Report's false accusation that XP was operating a "Ponzi scheme" severely harmed XP's reputation.

8.      XP now seeks the appropriate relief from the harm directly and proximately caused by Grizzly and Eggert's actions.

## THE PARTIES

9.      XP Inc. is incorporated under the laws of the Cayman Islands, with its principal executive office located at 20, Genesis Close Grand Cayman, George Town, Cayman Islands KY-1-1208. XP Inc. maintains an executive office in São Paulo, Brazil. XP Inc.'s shares are listed on the Nasdaq stock exchange under the ticker symbol "XP."

10.     XP Investimentos is a material operating subsidiary and core entity of XP Inc. that operates as a broker-dealer firm. XP Investimentos is incorporated under the laws of Brazil with its principal executive office in São Paulo, Brazil.

11. Grizzly is a limited liability company incorporated under the laws of the state of Delaware and registered to do business in Pennsylvania. Grizzly researches and publishes reports on companies.

12. Eggert is the Chief Executive Officer and sole member of Grizzly. Upon information and belief, Eggert resides in New York, New York.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Grizzly pursuant to CPLR § 301 because its sole member, Eggert, is domiciled in New York.[1] This Court also has jurisdiction over Eggert pursuant to CPLR § 301 because Eggert is a resident of New York.

14. This Court has jurisdiction over Grizzly and Eggert pursuant to CPLR § 302(a)(1) because Grizzly and Eggert transact business in and has directed its activities toward New York by authoring, publishing, and disseminating false statements about XP in New York with the goal of depressing XP's stock price and short-selling XP stock on the Nasdaq exchange. Accordingly, this action arises out of Grizzly and Eggert's in-state transactions.

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. This is an action between citizens of one or more States and a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Eggert resides in the State of New York and a substantial part of the events or omissions giving rise to the claims occurred in the State of New York.

---

[1] Siegfried Eggert, LinkedIn Profile, *available at* https://www.linkedin.com/in/siegfriedeggert/ (last visited July 2, 2025) (indicating that Defendant Eggert is located in New York, New York).

**FACTUAL ALLEGATIONS**

I.  **XP Inc. Is the Sole Investor n Its Proprietary Treasury Funds: Gladius and Coliseu.**

17.  XP Inc. owns dozens of subsidiaries with offices in São Paulo, Rio de Janeiro, New York, and Miami. These subsidiaries, which include XP Investimentos, operate in various markets throughout the world and offer various financial products ranging from fixed income, equities, investments funds, private pensions, and wealth management.

18.  XP Inc. also owns the Gladius and Coliseu investment funds. Gladius and Coliseu are proprietary treasury funds that were created for XP Inc.'s exclusive benefit. XP Inc. is the sole investor of the Funds. The Funds do not solicit or accept capital from external investors or clients, and do not distribute returns to external investors or clients.

19.  All of XP Inc. and its regulated subsidiaries' activities, including management of the Funds, are subject to extensive auditing and regulatory oversight. XP Inc. and the Funds are regularly audited by an external auditor, PricewaterhouseCoopers (PwC). The Funds are administered by BNY Mellon. XP is subject to the regulatory oversight of the Comissão de Valores Mobiliários, the securities regulator in Brazil ("Securities Regulator"), and the Banco Central do Brasil, the central bank of Brazil (the "Central Bank").

II. **XP Sells COEs in Compliance With Applicable Brazilian Regulations.**

20.  In the Brazilian market, XP offers "Certificado de Operações Estruturadas" – or COEs – which are complex financial products that resemble structured notes. The performance of COEs is linked to a variety of underlying assets like indexes, bonds, currencies, or stock prices. XP markets and sells COEs to a wide range of clients in compliance with applicable regulations in Brazil. Its COE fees typically range between 0.7% and 1.0% (of the nominal amount invested

in the respective applied COE) per year, which is consistent with the fees that it charges for other financial products. These fees are transparently communicated to XP's clients.

### III. Grizzly and Eggert Published False and Defamatory Statements Concerning XP and the Funds.

#### A. The Report Falsely States That XP is Running a Ponzi Scheme.

21. On March 12, 2025, Grizzly – at the direction of Eggert – published its Report, alleging principally that XP was running a "massive," "Madoff-like Ponzi scheme" through its Funds. Eggert was likely the principal author of the Report and was responsible for its publication.

22. Given the highly profitable returns reported by the Funds, Grizzly and Eggert improperly speculated that the "magnitude of cash flow that Gladius produces cannot be explained through profitable operations alone," but rather is explained by "nefarious activities, including predominantly what XP insiders describe as a Ponzi scheme." (Ex. A at 2.)

23. Grizzly and Eggert falsely elaborated that the "secret to Gladius returns is in fact a Ponzi scheme based on a product called COE (Certificado de Operações Estruturadas)." (*Id.* at 7.) Grizzly and Eggert falsely published that "XP funnels the majority of its cash flows associated with COES through Gladius and COLLSEU [sic]," and that the Funds are "taking cash inflows from COE products and [using] them to pay profits to XP" – that is, XP Inc. "books cash inflows from COE products as profits." (*Id*. at 8; *see also id.* at 1 (XP Inc. is "running a massive Ponzi scheme … through certain derivatives sales to retail clients, which are funneled through special funds and misrepresented as proprietary trading profits.").) These false and defamatory statements convey, in sum and substance, a message that the true source of the Funds' profitability is *not* their ordinary business activities, but a fraudulent maneuver by XP Inc. – booking COE sales proceeds as the trading profits of the Funds.

6

24. Grizzly and Eggert intended to defame XP Inc. through statements that they knew were demonstrably false. As a foundational matter, a Ponzi scheme is defined as "an investment scam that pays *early investors with money taken from later investors* to create the illusion of big profits."[2] Grizzly and Eggert's contentions that XP Inc. is running a Ponzi scheme through the Funds are, by definition, false because the Funds have no investors other than XP Inc. itself. XP Inc.'s ownership of the Funds therefore cannot constitute a Ponzi scheme.

25. Moreover, Grizzly and Eggert's contention that the Funds take "cash inflows from COE" sales and are used "to pay profits" to XP Inc. is false because the revenues generated from COE sales is a mere fraction of XP Inc.'s total revenues. Given that stark disparity, there is no way for XP Inc. to sustain the Funds' profits solely and exclusively from the revenues of the COEs. Moreover, under the IFRS accounting standards governing XP Inc.'s financial statements, XP Inc. and the Funds cannot – and do not – recognize COE sales proceeds as direct revenue or profit.

26. The majority of the Funds' profits are generated through spreads resulting from XP's market-making and hedging operations. With respect to its market-making business, XP leverages its extensive market expertise, advanced technological infrastructure, and acute risk management services to effectively manage its market positions and capture the bid-ask spread as profit. When aggregated across numerous transactions, the spread constitutes a significant source of revenue.

27. XP also utilizes dynamic hedging strategies to mitigate market risks associated with its positions. XP utilizes derivatives and other financial instructions to manage exposure to price

---

[2] Ponzi Scheme: Definition, Examples, and Origins, Investopedia, *available at* https://www.investopedia.com/terms/p/ponzischeme.asp (last accessed July 2, 2025).

fluctuations, interest rate changes, and other market variables. This risk management approach protects the Funds' capital, and enhances the stability and predictability of their returns.

28. XP further benefits from a substantial volume of client order flow, which provides natural hedging opportunities and enhances liquidity. Accordingly, XP is able to recycle risk and dynamically manage its market exposures. By offsetting positions internally whenever possible, XP reduces its reliance on external markets, and thus improves the Funds' profitability.

### B. The Report Falsely States That XP Sells COEs in a Predatory Manner.

29. Grizzly and Eggert falsely assert that "COEs are predatory investment products that XP pushes aggressively on its Brazilian retail clients," and charges "predatorily high fees" in doing so. (*Id*. 2, 9.) The Report thus falsely claims that XP "continuously is pushing and preying on retail investors to push these overpriced products onto" in a predatory manner. (*Id*. at 9.)

30. Grizzly and Eggert made these statements with the knowledge that they were demonstrably false. XP markets and sells COEs in compliance with the applicable regulations in Brazil. It communicates COE pricing in transparent terms, with fees ranging from 0.7% to 1.0% (of the nominal amount invested in the respective applied COE) per year. Such rates are comparable to those of other financial instruments that XP sells.

31. The Securities Regulator has authority and oversight over XP's sale of COEs and has never investigated or prosecuted XP for selling COEs in a predatory or unlawful manner.

### C. The Report Falsely States That XP Conceals an Illicit Scheme Behind a Highly Complex Structure.

32. Grizzly and Eggert wrongly accused XP Inc. of concealing its supposed scheme behind the complexity of Gladius's financial structure and portfolio. Grizzly and Eggert also falsely claim that XP Inc. has concealed a massive Ponzi scheme by "hiding behind a highly

8

complex structure" that supposedly caused the Funds' auditor to "issue[] only a qualified opinion for 2018 and 2019, and abstained from an opinion for 2016, citing lack of transparency" are false and misleading. (*Id*. at 2, 14.)

33. Grizzly and Eggert made these statements with knowledge that they were demonstrably false. Between 2016 and 2021, KPMG served as the external auditor to XP Inc. and the Funds. Since 2021, PwC has assumed that role. The Funds are independently administered by BNY Mellon. Neither XP Inc.'s external auditor nor the independent administrator of the Funds has ever raised any concerns about the way in which the Funds are structured or operated. XP Inc.'s external auditor has never flagged an illicit scheme operating within the Funds' structure, or expressed that XP Inc. or the Funds have withheld information about the Funds that would prevent the auditor from conducting its audit functions. If anything, the Funds' liquidity management, risk mitigation, market-making operations, and accounting practices have been highly scrutinized in the audit process.

34. Contrary to the Report's false statements, the Funds' external auditor has never abstained from issuing an opinion in 2016 – or any year for that matter – in connection with its audit. Moreover, KPMG never issued a qualified opinion in 2019 following its audit of the Funds. And, in 2018, KPMG issued a qualified opinion based solely on the fact that the financial statements of a separate entity that the Funds had invested in were not finalized – and thus could not be reviewed by KPMG – as of the audit date. In other words, the qualified opinion in 2018 was not issued due to a lack of transparency or concerns about the integrity of the Funds' structure or operations.

35. Moreover, XP Inc. and the Funds are subject to stringent regulatory oversight by the Securities Regulator and the Central Bank in Brazil, as well as the Securities and Exchange

9

Commission in the United States. None of these regulators has ever investigated or found that XP has concealed, much less operated, an illicit, fraudulent, or Ponzi scheme of the kind alleged in the Report.

**IV. Grizzly and Eggert Apparently Seek to Short XP Inc.'s Stock Price Through Their Publication of the Report.**

36. While Grizzly purports to be a market research and analysis firm, its primary – and often only – apparent purpose in publishing reports on companies like XP is to exploit their stock price for Grizzly's own financial benefit. As Grizzly readily admits on its website, "[a]s of the publication date of our articles, we and our affiliates may have long or short positions in the companies covered."[3] In other words, Grizzly's own words and conduct demonstrate that it (and/or Eggert) had a position in XP Inc. stock whose price Grizzly and Eggert knew would be negatively affected by the malicious, false, and defamatory statements contained in the Report.

37. This is not the first time that Grizzly has published false and defamatory statements for the apparent purpose of shorting a company's stock. For example, in March 2023, Fiat Lux, another short seller, criticized Grizzly's report on a global lithium producer, Sigma Lithium, as "so full of errors, oversights, elementary accounting mistakes and general faults that we have no choice but to see the report as utterly non-credible."[4] Grizzly issued a retraction, but Fiat Lux later identified that the metadata remaining in Grizzly's report revealed that Grizzly had simply copied

---

[3] About, Grizzly Research, *available at* https://grizzlyreports.com/about-grizzly-research-llc/ (last accessed July 2, 2025).

[4] "Why a Secretive Short Seller Is Challenging Reports Made by Peers," *Institutional Investor*, April 12, 2023, *available at* https://www.institutionalinvestor.com/article/2bstqqckp59uso7sl1zpc/culture/why-a-secretive-short-seller-is-challenging-reports-made-by-peers (last accessed July 2, 2025).

and pasted entire sections of its purported analysis from emails with its financial backer, a hedge fund known for working with activist short sellers.[5]

38.     In XP's case, Grizzly – at Eggert's direction and knowledge – assumed a short position in XP's stock. How do we know Grizzly had a short? Upon publishing the Report on its website and disseminating it through various social media channels, including its X account, Grizzly announced: "***We are short XP Inc.***"[6] Thus, it appears that Grizzly and Eggert published the Report with the sole aim of tanking XP's stock price and reaping a profit as a result.

**V.   Grizzly and Eggert's Publication of The Report Caused Intended, Foreseeable, and Significant Pecuniary and Reputational Harm to XP.**

39.     Grizzly and Eggert's publication of the Report triggered a cascade of re-posts by various other financial outlets and influencers, creating a buzz of negative publicity for XP Inc. and XP Investimentos. For example, Relatorio Reservado – a prominent Brazilian news and media company – published an article entitled "Many questions remain unanswered in the trail of accusations against XP," citing the Report.[7] Brasil 247, a major news and political analysis site, published an article titled "XP accused of operating a pyramid scheme," relying on the false and defamatory statements contained in the Report.[8] These publications, among others that reported the false and defamatory statements in the Report, have a substantial readership.

---

[5] *Id.*

[6] Post by @GrizzlyResearch account on X, *available at* https://x.com/ResearchGrizzly/status/1899819010809553289 (last accessed on July 2, 2025).

[7] https://relatorioreservado.com.br/noticias/ha-muitas-perguntas-ainda-sem-resposta-no-rastro-das-acusacoes-contra-a-xp/ (last accessed on July 2, 2025).

[8] https://www.brasil247.com/brasil/xp-e-acusada-de-operar-esquema-de-piramide-financeira (last accessed on July 2, 2025).

40. The Report also was circulated widely by financial influencers, each with hundreds of thousands of followers. For example, The Investor (@leiatheinvestor) on X – which boasts over 304,000 followers – disseminated the message, "Research Grizzly is short on XP (Nasdaq: XP) and claims in a report that 'the total profits depend on what insiders call a Ponzi scheme.'"[9] Numerous posts by other influencers and outlets posted similar messages on X, YouTube, and Instagram.

41. As a result, the Report had a profound and devastating effect on XP Inc. and XP Investimentos. Promptly after the Report was published, XP Inc.'s stock price tumbled 4%. XP Investimentos' investors, clients, and business partners questioned the integrity of its operations, resulting in a sharp decline of revenue from retail and private wealth clients. Several of XP Investimentos' corporate and institutional clients withdrew funds, causing net inflows to plummet.

42. To stanch the negative media attention and assuage the markets, XP Inc. issued a formal statement (and a Form 6-K filing with the SEC) on March 12, 2025, asserting that the Report "contains misleading and inaccurate allegations regarding the Company's business model, profitability, and operational practices …."[10] XP Inc. further stated that it "complies with all applicable regulations and legislation and is supervised by the CVM, the Central Bank of Brazil, the SEC, and other regulatory authorities," and that its "operations are regularly audited by top-tier independent institutions."[11]

---

[9] Post by @leiatheinvestor account on X, *available at* https://x.com/leiatheinvestor/status/1899821696464339321 (last accessed on July 2, 2025).

[10] Form 6-K filed March 12, 2025, *available at* https://www.sec.gov/Archives/edgar/data/1787425/000095010325003359/dp226223_ex9901.htm (last accessed on July 2, 2025).

[11] *Id.*

43. In total, Grizzly and Eggert's publication of the malicious and defamatory statements in the Report caused XP Inc. and XP Investimentos to suffer more than $100 million in pecuniary and reputational harm.

## FIRST CAUSE OF ACTION
### (Defamation – Libel)

44. XP repeats and realleges the allegations set forth above as though fully set forth herein.

45. Grizzly and Eggert – by virtue of his control over Grizzly – authored, published, and widely disseminated without privilege or authorization, the Report.

46. The Report contains false and defamatory statements of fact, which are described in the allegations set forth above.

47. Grizzly and Eggert – by virtue of his control over Grizzly – authored, published, and broadly disseminated to the public these false and defamatory statements without sufficient factual bases for making the statements and did so with knowledge of their falsity, or at the very least, with reckless disregard for their truth or falsity.

48. As alleged in the foregoing paragraphs, given the context in which the false statements appear, reasonable readers – including investors, clients, and business partners of XP Inc. and XP Investimentos – understood Grizzly and Eggert to be making statements about XP that were true. No reasonable reader would construe the statements in the Report as mere opinions.

49. Grizzly purports to have expertise in financial research analysis and claims to have consulted various public sources and data to support the statements in the Report. However, Grizzly and Eggert knew or should have known that the statements in its Report were false when made.

50. Grizzly and Eggert deliberately authored and published these false and defamatory statements for the purpose of manipulating XP's stock price. Grizzly and Eggert's conduct has damaged XP's reputation and caused XP to incur significant damages, including the loss of revenue, the loss of customer, investor, and business relationships, and the cost of conducting investigations into Grizzly and Eggert's false accusations.

51. The false and defamatory statements authored and published by Grizzly and Eggert have injured XP's business and thus constitute libel *per se*.

52. As intended by Grizzly and Eggert, the statements in the Report lead to the defamatory implication that XP engages in fraudulent and unethical business practices. Accordingly, the publication of the Report and the statements therein constitute defamation by implication.

53. XP has suffered, and continues to suffer, damages as a direct and proximate result of the false and defamatory statements in an amount to be determined at trial.

54. Grizzly and Eggert's conduct was willful and malicious or manifested a knowing and reckless disregard of the rights of XP.

55. As a result of Grizzly and Eggert's conduct, XP is entitled to an award of exemplary and punitive damages against Grizzly and Eggert, and all costs, expenses and attorneys' fees incurred in these proceedings by XP.

## SECOND CAUSE OF ACTION
**(Trade Libel)**

56. XP repeats and realleges the allegations set forth above as though fully set forth herein.

57. Grizzly and Eggert – by virtue of his control over Grizzly – authored, published, and widely disseminated without privilege or authorization, the Report.

58. The Report contains false and defamatory statements of fact, which are described in the allegations set forth above.

59. Grizzly and Eggert – by virtue of his control over Grizzly – authored, published, and broadly disseminated to the public these false and defamatory statements about XP without sufficient factual bases for making the statements and did so with knowledge of their falsity, or at the very least, with reckless disregard for their truth or falsity.

60. As alleged in the foregoing paragraphs, given the context in which the false statements appear, reasonable readers – including investors, clients, and business partners of XP Inc. and XP Investimentos – understood Grizzly and Eggert to be making statements about XP that were true. No reasonable reader would construe the statements in the Report as mere opinions.

61. Grizzly purports to have expertise in financial research analysis and claims to have consulted various public sources and data to support its purportedly true statements. However, Grizzly and Eggert knew or should have known that the statements in its Report were false when made.

62. Grizzly and Eggert deliberately authored and published these false and derogatory statements with the intention of interfering with XP's existing and prospective business relationships and diminishing the value of XP's business. Grizzly and Eggert's dissemination of these false and derogatory statements was a substantial factor in causing third parties not to have business dealings with XP, including shareholders that sold XP Inc.'s stock, investors that withdrew their investments, and clients that withdrew their funds from XP. Grizzly and Eggert's dissemination of these false and derogatory statements also caused the value of XP's business to

15

diminish, as evidenced by the exodus of XP Investimentos' customers from the Private, Retail, Corporate, and Large Corporate segments following the publication of the Grizzly Report.

63. Grizzly and Eggert authored and published these false and defamatory statements for the purpose of manipulating XP's stock price. Grizzly and Eggert's conduct has damaged XP's reputation and caused XP to incur significant damages, including the loss of revenue, the loss of customer, investor, and business relationships, and the cost of conducting investigations into Grizzly and Eggert's false accusations.

64. The false and defamatory statements authored and published by Grizzly and Eggert have injured XP's business and thus constitute libel *per se*.

65. As a direct result of the Report's publication, XP has suffered, and continues to suffer special damages resulting from the exodus of XP's clients in its Private, Retail, Corporate, and Large Corporate segments.

66. As a direct result of the Report's publication, XP has suffered, and continues to suffer, damages as a direct and proximate result of the false and defamatory statements in an amount to be determined at trial.

67. Grizzly and Eggert's conduct was willful and malicious or manifested a knowing and reckless disregard of the rights of XP.

68. As a result of Grizzly and Eggert's conduct, XP is entitled to an award of exemplary and punitive damages against Grizzly and Eggert, and all costs, expenses and attorneys' fees incurred in these proceedings by XP.

## THIRD CAUSE OF ACTION
**(Tortious Interference with Business Relations)**

69. XP repeats and realleges the allegations set forth above as though fully set forth herein.

70. XP has business relationships with its investors and customers.

71. Grizzly and Eggert have been, at all relevant times, aware of XP's business relationships with its investors and customers.

72. As set forth above, Grizzly and Eggert – by virtue of his control over Grizzly – made false and defamatory statements about XP's business practices, and Grizzly and Eggert intended to fabricate, published, and disseminate those false and defamatory statements broadly to the public.

73. By making false and defamatory statements about XP's business practices in the Report, Grizzly and Eggert intentionally interfered with XP's business relationships with its investors and customers.

74. Grizzly and Eggert acted solely out of malice, or in the alternative, Grizzly and Eggert used dishonest, unfair, or improper means to interfere with XP's business relationships with its stockholders, investors, and customers.

75. Grizzly and Eggert acted with the sole purpose of harming XP by causing its stock price to fall, which in turn, was intended solely to benefit Grizzly and Eggert financially by permitting them to cover their short positions at a profit.

76. Grizzly and Eggert's actions have damaged XP's business relationships by calling into question the accuracy and completeness of XP's financial reporting, which caused multiple XP customers to exit their business relationships with XP.

17

77. XP has suffered, and continues to suffer, damages as a direct and proximate result of the false and defamatory statements in an amount to be determined at trial.

78. Grizzly and Eggert's conduct was willful and malicious or intentionally fraudulent or manifested a knowing and reckless disregard toward the rights of XP.

79. As a result of that conduct, XP is entitled to an award of exemplary and punitive damages against Grizzly, and all costs, expenses and attorneys' fees incurred in these proceedings by XP.

## REQUEST FOR RELIEF

WHEREFORE, XP prays for relief as follows:

Entry of judgment in favor of XP against Grizzly and Eggert for all damages sustained as result of their wrongdoing, including:

(a) Awarding compensatory money damages in an amount to be determined at trial;

(b) Awarding punitive damages in an amount sufficient to deter further wrongful and improper conduct;

(c) Ordering Defendants to immediately remove all false and defamatory statements concerning XP from the Grizzly website and other social media accounts and requiring Grizzly to publish on its website and other social media accounts a retraction of the Report for such a period as the Court may direct;

(d) Permanently enjoining Defendants from publishing, causing to be published, or disseminating any further false and defamatory statements concerning XP;

(e) Awarding costs and expenses incurred in connection with this action, including reasonable attorneys' fees to the extent available under applicable law;

(f) Awarding prejudgment interest at the maximum legal rate applicable to a judgment issued by this Court; and

(g) Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY**

Trial by jury is demanded on all issues so triable.

Dated: New York, New York
July 7, 2025

                      KASOWITZ LLP

                      By:  */s/ Daniel J. Fetterman*
                          Daniel J. Fetterman (dfetterman@kasowitz.com)
                          Brian S. Choi (bchoi@kasowitz.com)
                          Gabriel Santos Neves (gsantosneves@kasowitz.com)

                      1633 Broadway
                      New York, New York 10019
                      Tel.:   (212) 506-1700
                      Fax:   (212) 506-1800

                      *Attorneys for Plaintiffs XP Inc. and XP Investimentos CCTVM S.A.*